JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, William Cosme, appeals his convictions for burglary and theft resulting from a jury trial dealing with five consolidated criminal cases.[1] After a thorough review of the arguments and for the reasons set forth below, we affirm appellant's convictions, but vacate his sentence and remand for resentencing.
 {¶ 2} In case number CR-452048, appellant was indicted on May 20, 2004 on the following charges: one count of burglary, in violation of R.C.2911.12, a felony in the second degree, which included a notice of prior conviction as well as a repeat violent offender specification; one count of theft, in violation of R.C. 2913.02, a felony in the fifth degree; and one count of grand theft auto, in violation of R.C. 2913.02, a felony in the fourth degree. He was arraigned on May 25, 2004 and entered a plea of not guilty to these charges.
 {¶ 3} In case number CR-452606, appellant was indicted on June 3, 2004 on the following charges: one count of aggravated burglary, in violation of R.C. 2911.12, a felony in the first degree, which included three notices of prior conviction as well as three repeat violent offender specifications; one count of possession of criminal tools, in violation of R.C. 2923.24, a felony in the fifth degree. He was arraigned on June 8, 2004, and entered a plea of not guilty to these charges. *Page 3 
 {¶ 4} In case number CR-452936, appellant was indicted on June 14, 2004 on the following charge: one count of burglary, in violation of R.C. 2911.12, a felony in the second degree, which included three notices of prior conviction as well as three repeat violent offender specifications. He was arraigned on June 18, 2004 and entered a plea of not guilty to this charge.
 {¶ 5} In case number CR-466105, appellant was indicted on May 25, 2005 on one count of burglary, in violation of R.C. 2911.12, a felony in the second degree, which included a notice of prior conviction as well as a repeat violent offender specification; and two counts of theft, in violation of R.C. 2913.02, both felonies in the fifth degree. He was arraigned on May 31, 2005 and entered a plea of not guilty to these charges.
 {¶ 6} In case number CR-467537, appellant was indicted on July 1, 2005 on two counts of burglary, in violation of R.C. 2911.12, both felonies in the second degree, which included three notices of prior conviction as well as three repeat violent offender specifications. He was arraigned on July 7, 2005 and entered a plea of not guilty.
 {¶ 7} In each of his criminal cases, appellant opted for a jury trial. Because his convictions were substantially interrelated, the trial court granted the state's motion to consolidate the cases for purposes of trial. The jury trial commenced on January 24, 2006, and on January 27, 2006, the jury returned a verdict finding appellant guilty of one count of aggravated burglary, four counts of burglary, two *Page 4 
counts of theft, and one count of possession of criminal tools. At the close of the state's case, the trial court dismissed the charge of grand theft auto and granted appellant's Crim.R. 29 motion on each of the remaining theft counts, reducing them to misdemeanors in the first degree. In addition, appellant was found not guilty of one count of burglary in CR-452936. Appellant was sentenced to a term of 28 years incarceration on February 28, 2006.
 {¶ 8} The incidents that gave rise to the charges against appellant began on April 7, 2003. On that morning, Melissa Sackett was awakened by a cold draft in her Cleveland apartment. As she walked into her living room to check the source of the draft, she saw that her living room window had been broken. She also noticed that her purse was out of place and her DVD player, CD player, money and her mother's car keys were missing. Sackett also observed drops of blood on her entertainment center and television. After she contacted the Cleveland police department, Detective Michael Kalus responded to process the crime scene. Kalus collected blood evidence and fingerprints from Sackett's apartment.
 {¶ 9} During the early morning hours of March 15, 2004, Shayma Jasim was at her Cleveland home when she heard her doorbell ring. When she looked through the door's peephole, she did not recognize the man standing on her porch and did not open the door. As Jasim went back to bed, she heard someone walk into her home and soon after, she saw a man standing in her bedroom. Jasim chased the man out of her house and observed him as he got into the passenger side of a red *Page 5 
car and drove off. During the incident, Jasim was unable to get a good view of the man, and at trial she could not positively identify appellant as the man who had broken into her home.
 {¶ 10} On March 19, 2004, Melissa Gasko was sleeping in her Cleveland home when she was awakened by a sound and saw the shadowy figure of a man standing in her bedroom. She initially thought the figure was her boyfriend, but remembered that she had locked the door to her home, and her boyfriend would not have been able to get in. When she began to question the figure, he left her room and house. When Gasko went downstairs, she observed a large hole in the sliding glass door in the kitchen and broken glass all over her kitchen floor. She also observed that her television and radio were missing, a dresser drawer was open, and she found a pair of tights at the foot of her bed. After Gasko contacted the police, Detective Timothy Brown responded to the scene. Once there, detective Brown collected blood evidence and fingerprints.
 {¶ 11} During March 2004, Virginia Tasi was recuperating from surgery at her sister's home. On March 21, 2004, she and her sister decided to stop by her house to check on it. When they arrived at the house, they noticed that the front door was slightly ajar and that panes of glass had been broken out of the window in the door. They also noticed that there were drops of blood on the carpeting and that several items were missing from the house. The Cleveland police department was called, and blood samples and fingerprints were taken. In April 2004, William Senkus was *Page 6 
away from his Cleveland home on vacation. When he returned on April 19, 2004, he discovered broken glass from his front door and blood spots throughout his house. He also discovered that his DVD player and VCR were missing. Senkus called the Cleveland police department to report the incident. When the officers arrived, they collected blood and fingerprint evidence.
 {¶ 12} On April 28, 2004, Christine Bules arrived at her Cleveland home at approximately 6:30 p.m. As she was walking through her kitchen door, she noticed that the window pane in the door was missing. She heard sounds coming from the second floor of her house. As she looked up the stairwell that led to the second floor, she saw appellant standing at the top of the stairs. Appellant walked down the stairs and stood directly in front of Bules for several seconds. When Bules attempted to run away, appellant grabbed her and threw her to the ground. Appellant ran from the house, and Bules ran after him screaming and attempted to take down his licence plate number. After returning to her house, Bules noticed that several items, including a purse, were out of place and that several pieces of jewelry had been placed in a gym bag. She called the police to report the crime and was able to positively identify appellant in a photo array conducted by the police. In addition, several of Bules' neighbors observed her as she ran after appellant.
 {¶ 13} After DNA analysis was conducted, it was determined that all of the blood samples collected from the homes of Melissa Sackett, Karen Gasko, Virginia Tasi, and William Senkus belonged to the appellant. *Page 7 
 {¶ 14} Appellant brings this appeal, asserting five assignments of error.
 {¶ 15} "I. William Cosme was denied his constitutional rights guaranteed to him under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, sections 5, 10, and 16 of the Ohio Constitution when the court joined all five of his cases for one trial."
 {¶ 16} Appellant argues that the trial court abused its discretion when it granted the state's motion to join five of his criminal cases for purposes of trial. More specifically, he argues that the joinder of the cases prejudiced his constitutional right to a fair trial.
 {¶ 17} To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 50 OBR 481,450 N.E.2d 1140.
 {¶ 18} "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." State v Jenkins (1984), 15 Ohio St.3d 164, 222, quotingSpalding v. Spalding (1959), 355 Mich. 382, 384-385. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Id.
 {¶ 19} Crim.R. 8(A), which governs joinder of cases provides: *Page 8 
 {¶ 20} "Joinder of offenses: Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."
 {¶ 21} The trial court's decision to consolidate appellant's cases was not only warranted, but was entirely appropriate. Appellant's five cases were of similar character and constituted parts of a common scheme or plan as well as a course of criminal conduct. Five of the six offenses that he was charged with occurred between March and April 2004, and, in each case, appellant broke into a home and stole personal items. In addition, the homes he chose to break into were all located in the city of Cleveland, within the second police district.
 {¶ 22} We find that appellant's actions fell within the parameters of Crim.R. 8(A), and the trial court's actions were not unreasonable, arbitrary, or unconscionable when it granted the state's motion for joinder. The trial court did not abuse its discretion when it consolidated appellant's cases for trial, and appellant's first assignment of error is overruled.
 {¶ 23} "II. The trial court erred to the prejudice of defendant-appellant by permitting Charlotte Word to testify to a DNA report when she was not the analyst who tested the material and by admitting the said report and by allowing Bobby-Jo *Page 9 
Kennedy to testify as to her comparison of the findings of said report to another DNA report."
 {¶ 24} Appellant argues that the trial court committed plain error when it permitted witness Charlotte Word to testify regarding the DNA report when she did not perform the actual DNA analysis. He asserts that Word's testimony regarding the report constituted inadmissible hearsay and violated his constitutional right to confrontation. He further contends that Bobby-Jo Kennedy's testimony comparing the DNA report conducted by Word's laboratory to DNA reports conducted by her laboratory was also inadmissible.
 {¶ 25} To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon, (1995),102 Ohio App. 3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163, 166,661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83,656 N.E.2d 643.
 {¶ 26} Word admittedly did not perform the actual DNA analysis that comprised the report; however, she played an integral role in ensuring the scientific integrity of *Page 10 
the report. With respect to her job duties in the preparation of DNA reports, Word testified:
 {¶ 27} "In the forensic DNA laboratory that I was employed by, I didn't actually do the hands-on laboratory work, we had DNA analysts that did that work. I was one of the laboratory directors or the reviewers who reviewed the work that was done by the laboratory analysts, checked to see that they did their procedures correctly, did a second interpretation of the results that they obtained, and cosigned the reports with them stating the results and conclusions of the work that we did."
 {¶ 28} It is clear that Word's testimony did not constitute hearsay. Hearsay is defined as an out-of-court statement offered for the truth of the matter asserted. Not only did Word directly review appellant's DNA report, qualifying her to offer testimony about it, she also signed the report. Because the document bears Word's signature, her testimony regarding the documents did not constitute inadmissible hearsay, and the trial court did not err when it admitted her testimony.
 {¶ 29} Similarly, because the document was properly admissible as evidence, the trial court did not commit plain error when it permitted Kennedy, another expert witness, to use the report for purposes of comparison testimony.
 {¶ 30} It is clear that the trial court's actions did not constitute plain error. Accordingly, appellant's second assignment of error is overruled.
 {¶ 31} "III. Counsel's failure to object to the admission of improper evidence constituted ineffective assistance of counsel." *Page 11 
 {¶ 32} Appellant argues that his counsel's failure to object to the testimony of Word and Kennedy constituted ineffective assistance of counsel. He contends that, but for his counsel's failure to object, the outcome of the trial would have differed.
 {¶ 33} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144.
 {¶ 34} In reviewing a claim of ineffective assistance of counsel, itmust be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
 {¶ 35} The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley (1989),42 Ohio St.3d 136, that:
 {¶ 36} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant'sSixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."State v. Lytle *Page 12 
(1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623,627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668. * * *
 {¶ 37} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. `An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison (1981), 449 U.S. 361,364-365.' Strickland, supra, at 691. To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *."
 {¶ 38} We find no merit in appellant's argument that his counsel was ineffective. Defense counsel's failure to object did not negatively impact the outcome of appellant's trial. As stated previously, both Word and Kennedy were qualified to testify regarding the DNA reports, and Word's testimony did not constitute inadmissible hearsay. Had defense counsel objected to the admission of *Page 13 
the testimony, the objection would likely have been overruled on the basis that the evidence was properly admissible.
 {¶ 39} The facts of this case do not indicate that the outcome of appellant's trial would have differed, but for defense counsel's actions. Accordingly, appellant's trial counsel was not ineffective, and his third assignment of error is overruled.
 {¶ 40} "IV. The cumulative impact of the errors reflective in this record amounted to a denial of due process and the right to a fair trial."
 {¶ 41} Appellant argues that the cumulative errors assigned in this appeal had a negative impact on the fundamental fairness of his trial and warrant a reversal. More specifically, he asserts that the errors that occurred at trial constituted cumulative plain error and should be reversed. We disagree.
 {¶ 42} As the Ohio Supreme Court held in State v. Madrigal (2000),87 Ohio St.3d 378, 398, "In order to even consider whether `cumulative' error is present, [the court] would first have to find that multiple errors were committed in [the] case." The Ohio Supreme Court is clear in its holding that, in order to find cumulative errors, there must first be a showing that errors in fact occurred.
 {¶ 43} In this case, it is clear that neither the trial court, nor appellant's counsel, committed errors at trial. As stated previously, plain error did not occur when expert testimony was admitted, and defense counsel was not ineffective in his representation of appellant. Accordingly, since we find no errors, appellant's fourth assignment of error is overruled. *Page 14 
 {¶ 44} "V. The trial court erroneously imposed a sentence that exceeded the minimum and concurrent terms of imprisonment on the basis of findings made by the trial judge pursuant to a facially unconstitutional statutory sentencing scheme."
 {¶ 45} Appellant argues that the trial court erred when it imposed a sentence exceeding the minimum and when it imposed a concurrent sentence. He specifically asserts that his sentence, based on the findings of the trial court, was made pursuant to an unconstitutional sentencing scheme.
 {¶ 46} The Ohio Supreme Court's recent decision in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, renders appellant's assignment of error without merit for the purposes of this appeal. InFoster, the Court found several sections of the revised code unconstitutional, including R.C. 2929.14(B), and severed the offending portions from the statutes. As a result, trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or state reasons for imposing more than the minimum sentences. Foster, supra.
 {¶ 47} Because appellant's sentence was based on an unconstitutional statute, it is deemed void. The appellant is entitled to a new sentencing hearing, although the parties may stipulate to the sentencing court acting on the record before it. Foster, supra. In accordance with the decision in Foster involving appeals with sentencing claims pending on review, we vacate appellant's sentence and remand this case to the trial court for a new sentencing hearing. *Page 15 
Convictions affirmed, sentence vacated, cause remanded for resentencing.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for proceedings consistent with this opinion. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN PART, CONCURS IN JUDGMENT ONLY IN PART, AND DISSENTS IN PART (SEE SEPARATE OPINION)
[1] This appeal encompasses case numbers CR-452048, CR-452606, CR-466105, and CR-467537; appellant was found not guilty in CR-452936 and it is not part of this appeal.