JOURNAL ENTRY AND OPINION
{¶ 1} Defendant William Cosme appeals from the sentence imposed upon re-sentencing, upon his convictions in case numbers CR-452048, CR-452606, CR-466105, and CR-467537. For the reasons set forth below, we affirm defendant's sentence but reverse the order of restitution and remand for a hearing as to restitution.
 {¶ 2} The facts of this matter were set forth within defendant's direct appeal as follows:
 {¶ 3} "In case number CR-452048, appellant was indicted on May 20, 2004 on the following charges: one count of burglary [at the home of Melissa Sackett], in violation of R.C. 2911.12, a felony in the second degree, which included a notice of prior conviction as well as a repeat violent offender specification; one count of theft, in violation of R.C. 2913.02, a felony in the fifth degree; and one count of grand theft auto, in violation of R.C. 2913.02, a felony in the fourth degree. He was arraigned on May 25, 2004 and entered a plea of not guilty to these charges.
 {¶ 4} "In case number CR-452606, appellant was indicted on June 3, 2004 on the following charges: one count of aggravated burglary [at the home of Christine Bules], in violation of R.C. 2911.12, a felony in the first degree, which included three notices of prior conviction as well as three repeat violent offender specifications; one count of possession of criminal tools, in violation of R.C. 2923.24, a felony in the fifth degree. He was arraigned on June 8, 2004, and entered a plea of not guilty to these *Page 3 
charges.
 {¶ 5} "In case number CR-452936, appellant was indicted on June 14, 2004 on the following charge: one count of burglary, in violation of R.C. 2911.12, a felony in the second degree, which included three notices of prior conviction as well as three repeat violent offender specifications. He was arraigned on June 18, 2004 and entered a plea of not guilty to this charge. [Defendant was subsequently acquitted of this charge.]
 {¶ 6} "In case number CR-466105, appellant was indicted on May 25, 2005 on one count of burglary [at the Gasko home], in violation of R.C. 2911.12, a felony in the second degree, which included a notice of prior conviction as well as a repeat violent offender specification; and two counts of theft, in violation of R.C. 2913.02, both felonies in the fifth degree. He was arraigned on May 31, 2005 and entered a plea of not guilty to these charges.
 {¶ 7} "In case number CR-467537, appellant was indicted on July 1, 2005 on two counts of burglary [one at the home of Virginia Tasi and one at the home of William Senkus], in violation of R.C. 2911.12, both felonies in the second degree, which included three notices of prior conviction as well as three repeat violent offender specifications. He was arraigned on July 7, 2005 and entered a plea of not guilty.
 {¶ 8} "In each of his criminal cases, appellant opted for a jury trial. Because *Page 4 
his convictions were substantially interrelated, the trial court granted the state's motion to consolidate the cases for purposes of trial. The jury trial commenced on January 24, 2006, and on January 27, 2006, the jury returned a verdict finding appellant guilty of one count of aggravated burglary, four counts of burglary, two counts of theft, and one count of possession of criminal tools. At the close of the state's case, the trial court dismissed the charge of grand theft auto and granted appellant's Crim. R. 29 motion on each of the remaining theft counts, reducing them to misdemeanors in the first degree. In addition, appellant was found not guilty of one count of burglary in CR-452936. Appellant was sentenced to a term of 28 years incarceration on February 28, 2006.
 {¶ 9} "The incidents that gave rise to the charges against appellant began on April 7, 2003. On that morning, Melissa Sackett was awakened by a cold draft in her Cleveland apartment. As she walked into her living room to check the source of the draft, she saw that her living room window had been broken. She also noticed that her purse was out of place and her DVD player, CD player, money and her mother's car keys were missing. Sackett also observed drops of blood on her entertainment center and television. After she contacted the Cleveland police department, Detective Michael Kalus responded to process the crime scene. Kalus collected blood evidence and fingerprints from Sackett's apartment.
 {¶ 10} "During the early morning hours of March 15, 2004, Shayma Jasim was *Page 5 
at her Cleveland home when she heard her doorbell ring. When she looked through the door's peephole, she did not recognize the man standing on her porch and did not open the door. As Jasim went back to bed, she heard someone walk into her home and soon after, she saw a man standing in her bedroom. Jasim chased the man out of her house and observed him as he got into the passenger side of a red car and drove off. During the incident, Jasim was unable to get a good view of the man and, at trial, she could not positively identify appellant as the man who had broken into her home.
 {¶ 11} "On March 19, 2004, Melissa Gasko was sleeping in her Cleveland home when she was awakened by a sound and saw the shadowy figure of a man standing in her bedroom. She initially thought the figure was her boyfriend, but remembered that she had locked the door to her home, and her boyfriend would not have been able to get in. When she began to question the figure, he left her room and house. When Gasko went downstairs, she observed a large hole in the sliding glass door in the kitchen and broken glass all over her kitchen floor. She also observed that her television and radio were missing, a dresser drawer was open, and she found a pair of tights at the foot of her bed. After Gasko contacted the police, Detective Timothy Brown responded to the scene. Once there, detective Brown collected blood evidence and fingerprints.
 {¶ 12} "During March 2004, Virginia Tasi was recuperating from surgery at her *Page 6 
sister's home. On March 21, 2004, she and her sister decided to stop by her house to check on it. When they arrived at the house, they noticed that the front door was slightly ajar and that panes of glass had been broken out of the window in the door. They also noticed that there were drops of blood on the carpeting and that several items were missing from the house. The Cleveland police department was called, and blood samples and fingerprints were taken. In April 2004, William Senkus was away from his Cleveland home on vacation. When he returned on April 19, 2004, he discovered broken glass from his front door and blood spots throughout his house. He also discovered that his DVD player and VCR were missing. Senkus called the Cleveland police department to report the incident. When the officers arrived, they collected blood and fingerprint evidence.
 {¶ 13} "On April 28, 2004, Christine Bules arrived at her Cleveland home at approximately 6:30 p.m. As she was walking through her kitchen door, she noticed that the window pane in the door was missing. She heard sounds coming from the second floor of her house. As she looked up the stairwell that led to the second floor, she saw appellant standing at the top of the stairs. Appellant walked down the stairs and stood directly in front of Bules for several seconds. When Bules attempted to run away, appellant grabbed her and threw her to the ground. Appellant ran from the house, and Bules ran after him screaming and attempted to take down his licence plate number. After returning to her house, Bules noticed that *Page 7 
several items, including a purse, were out of place and that several pieces of jewelry had been placed in a gym bag. She called the police to report the crime and was able to positively identify appellant in a photo array conducted by the police. In addition, several of Bules' neighbors observed her as she ran after appellant.
 {¶ 14} "After DNA analysis was conducted, it was determined that all of the blood samples collected from the homes of Melissa Sackett, Karen Gasko, Virginia Tasi, and William Senkus belonged to the appellant" SeeState v. Cosme, CR-467537, Cuyahoga App. No. 87958, 2007-Ohio-1454.
 {¶ 15} Defendant was found not guilty, convicted of the burglary charge alleged in case number CR-452936, but was convicted of aggravated burglary and possession of criminal tools in case number CR-452606 (Christine Bules). He was also convicted of burglary and misdemeanor theft in case number CR-466105 (Gasko) and burglary and misdemeanor theft in case number CR-452048 (Melissa Sackett), and two counts of burglary as set forth in case number CR-467537 (home of Virginia Tasi and home of William Senkus). This court subsequently affirmed defendant's convictions but vacated the twenty-eight year sentence imposed by the trial court and remanded for resentencing pursuant to the decision in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470.
 {¶ 16} Upon resentencing, the trial court imposed an aggregate sentence of twenty-six years imprisonment. The trial court also ordered that defendant pay *Page 8 
restitution of $1,000 to Christine Bules and $3,354 to Virginia Tasi. Defendant now appeals and assigns two errors for our review.
 {¶ 17} Defendant's first assignment of error states:
 {¶ 18} "The trial court erroneously imposed a sentence which exceeded the minimum and concurrent terms of imprisonment on the basis of a facially unconstitutional statutory sentencing scheme."
 {¶ 19} Within this assignment of error, defendant complains that the re-sentencing remedy outlined in State v. Foster, supra, violates the prohibition against ex post facto laws. Specifically, defendant complains that he has been "substantially disadvantaged" since the statutory presumptions in sentencing have been eliminated and trial court was permitted to impose a longer sentence than previously contemplated without furnishing reasons for its action. He also complains that, following the decision in Foster, the statutorily created challenge to consecutive sentences have been eliminated.
 {¶ 20} The ex post facto clause of Article 1, Section 10 of the United States Constitution prohibits any legislation that "changes the punishment, and inflicts greater punishment, than the law annexed to the crime, when committed." Miller v. Florida (1987), 482 U.S. 423, 429, 107 S.Ct. 2446, 96 L.Ed.2d 351, quoting Calder v. Bull (1798), 3 Dall. 386, 390, 3 U.S. 386, 1 L.Ed. 648.
 {¶ 21} As to defendant's complaint that trial court was permitted to impose a *Page 9 
longer sentence than previously contemplated without furnishing reasons for its action, we note that this court recently rejected this same contention in State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715, and stated as follows:
 {¶ 22} "In the instant case, Mallette had notice that the sentencing range was the same at the time he committed the offenses as when he was sentenced. Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where none existed. As a result, we conclude that the remedial holding of Foster does not violate Mallette's due process rights or the ex post facto principles contained therein." Accord State v. Fair, Cuyahoga App. No. 89653, 2008-Ohio-930; State v. Laboy, Cuyahoga App. No. 89510, 2008-Ohio-451.
 {¶ 23} With regard to defendant's complaint that the statutorily created challenge to consecutive sentences have been eliminated, we note that pursuant to R.C. 2953.08(A):
 {¶ 24} "In addition to any other right to appeal * * * a defendant who * * * pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds:
 {¶ 25} "* * *
 {¶ 26} "(4) The sentence is contrary to law."
 {¶ 27} In State v. VanHoose, Pike App. No. 07CA765, 2008-Ohio-1122, the *Page 10 
court noted that the right to appeal any sentence that was contrary to law is the same before and after the Foster decision. Accord, State v.Elswick, Lake App. 2006-L-075, 2006-Ohio-7011 ("Appellant's right to a meaningful appellate review has not been impeded by the decision inFoster.")
 {¶ 28} This claim is therefore without merit.
 {¶ 29} Defendant's second assignment of error states:
 {¶ 30} "The trial court erroneously imposed restitution in violation of R.C. 29291.18(A)(1) and 2929.19(B)(6)."
 {¶ 31} Defendant next complains that the trial court failed to hold a hearing on the issue of restitution upon his objection to the restitution order.
 {¶ 32} R.C. 2929.18(A)(1) authorizes the trial court to impose restitution, based upon the victim's economic loss, as a financial sanction. The statute provides, in part:
 {¶ 33} "* * * If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate *Page 11 
result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. * * *"
 {¶ 34} Prior to imposing restitution, a trial court "shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(6). There must be some evidence in the record the trial court considered defendant's present and future ability to pay the sanction. State v. Fuller, Lucas App. No. L-02-1387,2004-Ohio-2675; State v. Conway, Franklin App. No. 03AP-1120. "While a court is neither required to hold a hearing to make this determination nor to indicate in its judgment entry that it considered a criminal defendant's ability to pay, there must be some evidence in the record to show that the court did consider this question." State v. Berry, Lucas App. No. L-05-1048, 2007-Ohio-94. "[T]he requirements of R.C. 2929.19(B)(6) are met when the trial court indicates in its judgment entry that it has considered the offender's present and future ability to pay." State v. Anderson, 172 Ohio App.3d 603, 2007-Ohio-3849,876 N.E.2d 632.
 {¶ 35} In this matter, defendant's trial counsel stated:
 {¶ 36} "The Court of Appeals vacated a sentence and sent it back because of the unconstitutional reliance upon certain sections of Ohio's sentencing statutes. The restitution was ordered to be determined by probation. That determination was *Page 12 
not made part of the record prior to expiration of the appellate process.
 {¶ 37} "As Mr. Cosme took an appeal, the State was open to raise those issues in a cross appeal order or at least get it in front of the court at that time and failed to do so. So the orders for restitution would be too late if coming at this time.
 {¶ 38} "Specifically, as to CR-466105 and 452048, a misdemeanor theft conviction does not support restitution greater than $500. As to 466105, we object to any restitution that would be placed on Mr. Cosme. As you can see, Your Honor, Mr. Cosme's experience through trial, his experience here in prison serving his time for these acts has solidified his remorse."
 {¶ 39} The trial court then ordered that defendant pay restitution during post release control in the amount of $3,354 to Virginia Tasi, the victim in number CR-467537, and restitution in the amount of $1,000 to Christine Bules, the victim in case number CR-452606. From the record, defendant objected to paying restitution and there was no evidence concerning his ability to pay. The court's judgment entry did not indicate that it considered the offender's present and future ability to pay. We therefore find this assignment of error to be well-taken and we reverse and remand for further proceedings consistent with this opinion.
 {¶ 40} The sentence is affirmed and the order of restitution is reversed and remanded for further proceedings.
It is ordered that appellee and appellant split the costs herein taxed. *Page 13 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, A.J., and CHRISTINE T. MCMONAGLE, J., CONCUR *Page 1