JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Randolph Horsey ("Horsey"), appeals the trial court's *Page 2 
order of restitution. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2005, Horsey was indicted in three separate cases for a total of four counts of theft. In Case No. CR-464779, he was charged with one count of theft with an elderly specification. In Case No. CR-466596, he was charged with two counts of theft with an elderly specification. In Case No. CR-467301, he was charged with one count of theft. The matters proceeded to a jury trial, at which he was found guilty of all counts. The trial court sentenced Horsey to six years in prison and ordered him to pay a total of $266,000 in restitution. Relevant to this appeal, the following evidence was presented at trial.
 {¶ 3} During a three-year period, Horsey took more than $270,000 from five individuals: Arthur Swirsky ("Swirsky"), John and Bonnie Tarmann (collectively as the "Tarmanns"), Martin Gold, and Patrick Niland.[1]
Horsey first met Swirsky in 2002. Horsey told him that he owned his own business and was having difficulty getting it started. Initially, Swirsky gave Horsey money from his savings account and cash advances on his credit cards. As their relationship continued, Swirsky opened up new credit cards for Horsey and took a $74,000 mortgage on his home to help Horsey. By the end of their relationship, Horsey had taken $250,000 from Swirsky.[2]
 {¶ 4} John and Bonnie Tarmann met Horsey in 2005. They were shopping at Home *Page 3 
Depot when Horsey asked them if they needed a handyman. The Tarmanns hired Horsey to remodel their kitchen and bathroom. During the renovations, Horsey would ask them for money to buy tools, supplies, groceries, and gas. This money was in addition to the wages they had already paid him. Horsey never completed the work on the Tarmanns' home and, by the time they ended their relationship with him, they had paid him $14,039.99 and purchased $2,892.77 in tools.
 {¶ 5} At his sentencing hearing, the trial court ordered Horsey to pay $250,000 in restitution to Swirsky and $16,000 in restitution to the Tarmanns.
 {¶ 6} Horsey raises two assignments of error on appeal. In the first assignment of error, he argues that the trial court erred when it imposed restitution without considering his present and future ability to pay. He contends that there is nothing in the record to indicate that the trial court considered his ability to pay.
 {¶ 7} In the second assignment of error, he argues that the trial court erred when it imposed restitution without establishing the amount of damages to a reasonable degree of certainty. He maintains that the $266,000 imposed as restitution was not shown to bear a reasonable relationship to the actual losses suffered by Swirsky and the Tarmanns. We will discuss both assignments of error together because they involve the same evidence and standard of review.
 Plain Error {¶ 8} Initially, we note that Horsey did not object to the order of restitution nor to the *Page 4 
amount ordered at his sentencing hearing. Thus, we review the record for plain error. State v. Marbury (1995), 104 Ohio App.3d 179, 181,661 N.E.2d 271.
 {¶ 9} Crim. R. 52(B) provides that: "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We invoke plain error if we find that the circumstances in the instant case are exceptional and that reversal of the restitution order is necessary to prevent a manifest miscarriage of justice. State v. Landrum (1990), 53 Ohio St.3d 107,559 N.E.2d 710. For the reasons that follow, we cannot discern plain error.
 Restitution Order {¶ 10} As part of a sentence, the trial court may order restitution to a crime victim "in an amount based on the victim's economic loss." R.C. 2929.18(A)(1). In doing so, the trial court must "consider the offender's present and future ability to pay the amount * * *." R.C. 2929.19(B)(6). "While a court is neither required to hold a hearing to make this determination nor to indicate in its judgment entry that it considered a criminal defendant's ability to pay, there must be some evidence in the record to show that the court did consider this question." State v. Cosme, Cuyahoga App. No. 90075, 2008-Ohio-2811, quoting State v. Berry, Lucas App. No. L05-1048, 2007-Ohio-94.
 {¶ 11} "[T]he court may base the amount of restitution it orders on an amount recommended by the victim, the offender, * * * estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court *Page 5 
orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." R.C. 2929.18(A)(1).
 {¶ 12} The amount of the restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty.Marbury; State v. Dingness (Apr. 30, 1998), Cuyahoga App. No. 72451, citing State v. Warner (1990), 55 Ohio St.3d 31, 69, 564 N.E.2d 18.
 {¶ 13} In the instant case, a review of the record reveals that the trial court properly considered Horsey's present and future ability to pay and that the amounts bear a reasonable relationship to the victims' losses. At the sentencing hearing, Horsey spoke on his own behalf and never objected to or denied that he owed Swirsky $250,000 and the Tarmanns $16,000. He admitted that the receipts and addendums Swirsky and the Tarmanns provided were accurate and that he was not trying to hide anything.
 {¶ 14} The record contained several receipts from 2002 to 2005 indicating that Horsey owed Swirsky money. In February 2004, Horsey signed a document indicating that he owed Swirsky at least $200,000. Horsey continued to take money from Swirsky until May 2005 and would "repay" Swirsky with money he had previously borrowed from him. Swirsky stated that he was damaged in the amount of $250,000. A letter from Swirsky's daughter indicated that the amount Horsey took from Swirsky was closer to $300,000. The Tarmanns also had numerous documents signed by Horsey stipulating the amount of money paid to him. The $16,000 awarded by the court is $932.76 less than the total loss claimed by the *Page 6 
Tarmanns.
 {¶ 15} Furthermore, Horsey informed the court he was willing to make amends and rectify the situation. He described himself as a good contractor who experienced bad business practices. He informed the court that he had two million in insurance that was still in effect and would have easily paid off the victims' claims. He also stated that he spent over $105,000 on his business and his "storefront had a lot of things inside it."
 {¶ 16} Based on these statements, we find that the trial court's restitution order did not violate Horsey's substantial rights, and we find no plain error in the court's order that Horsey pay $266,000 in restitution. Accordingly, the first and second assignments of error are overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 7 
COLLEEN CONWAY COONEY, PRESIDING JUDGE
ANTHONY O. CALABRESE, JR., J., and KENNETH A. ROCCO, J., CONCUR
[1] Horsey's appeal only addresses the restitution orders in Case No. CR-464779 involving Swirsky and Case No. CR-467301 involving the Tarmanns.
[2] At the time of trial, Swirsky's house was in foreclosure and he had filed for bankruptcy. *Page 1