[Cite as *State v. Jennings*, 2013-Ohio-5428.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99631

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KIMBRELL JENNINGS

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
### FOR RESENTENCING

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-565749

**BEFORE:**   Boyle, P.J., Jones, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**   December 12, 2013

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio   44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Nicole Ellis
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Kimbrell Jennings, appeals his conviction and sentence. He raises three assignments of error for our review:

1. The trial court erred in denying appellant's motion for acquittal as to the [theft] charge when the state failed to present sufficient evidence to sustain a conviction.

2. Appellant's conviction is against the manifest weight of the evidence.

3. The trial court erred in ordering restitution in the amount of $3,300 without holding a hearing and without holding a hearing on appellant's ability to pay.

{¶2} Finding some merit to his appeal, we affirm in part, reverse in part, and remand for resentencing.

## Procedural History and Factual Background

{¶3} In August 2012, Jennings was charged with four counts: burglary in violation of R.C. 2911.12(A)(2); theft in violation of R.C. 2913.02(A)(1) with a furthermore clause that the victim was elderly and the value of the property stolen was between $1,000 and $7,500; vandalism in violation of R.C. 2909.05(A); and possessing criminal tools in violation of R.C. 2923.24(A). He pleaded not guilty to the charges and waived his right to a jury trial. The following evidence was presented to the bench.

{¶4} Kathy Stewart testified that in August 2012, she was living at 4348 East 141st Street, in Cleveland, Ohio. Stewart stated that on August 8, 2012, at around 10:00 or 11:00 a.m., she saw a man, who she knew as "K.B.," carrying lamps from her neighbor's house, "two doors up from her house," to another house across the street —

from 4340 East 141st Street to 4347 East 141st Street. She identified Jennings as the man she knows as K.B. Stewart testified that K.B. also lives two houses away from her, but in the opposite direction. Stewart said that her neighbors who lived at 4340 East 141st Street were on vacation at the time their home was being burglarized.

{¶5} Stewart called 911. She identified her voice on the 911 tape that was played in court. On the 911 tape, Stewart described what K.B. was wearing. When police arrived about ten minutes later, she told them where K.B. was.

{¶6} Ethel Crowder, the victim, testified that she owned the home at 4340 East 141st Street, in Cleveland, Ohio, but she no longer lived there. She explained that she rented the house out to her granddaughter, her granddaughter's friend, and her great-granddaughter.

{¶7} Crowder testified that police told her on August 8, 2012, that her house at 4340 East 141st Street had been burglarized. Crowder testified that her granddaughter and great-granddaughter had gone to North Carolina approximately five days before the burglary; they were supposed to be gone for one week. Crowder said that she went by the house every day to check on it while they were gone.

{¶8} Crowder testified that when she went to her home at 4340 East 141st Street with police, many items were missing, including a window air conditioner, copper pipes to the hot water tank and kitchen sink, the kitchen counter, sink, and faucet, and a storm door on the back of the house. Crowder further testified that many other items were damaged, including her front door, an interior door, custom blinds, kitchen walls, and a

window on the back of the house. Her bathroom was also completely "tore up." She said that her bathroom sink was lying on the floor and "everything was gone."

{¶9} Crowder testified that her granddaughter never came back to live at the house again because it was damaged from the burglary.

{¶10} On cross-examination, Crowder denied that her granddaughter had abandoned the house. She further denied that she ever told police that her granddaughter did not intend to come back to the house.

{¶11} Officer Brent Scaggs testified that on August 8, 2012, he responded to reports of a burglary on East 141st Street. When he and his partner arrived to the area, his partner saw two or three men running. They got out of their police vehicle and chased the men. Officer Scaggs stated that he saw a man wearing clothes that matched the description given to the radio dispatcher — blue pants and a gray top. Officer Scaggs stated that the man looked like he was trying to get away from the police, but he was limping. Officer Scaggs yelled to the man, who then stopped. The man "sighed," like he knew he "screwed up." Officer Scaggs handcuffed the man. He identified Jennings as the man he caught that day.

{¶12} Officer Scaggs said that they found an air conditioning unit lying in the backyard of the house across the street (4337 East 141st Street) from Crowder's house. The woman who lived at 4337 East 141st Street had no idea about the burglary or who was involved.

{¶13} Officer Scaggs testified on cross-examination that when he arrived on the scene, he did not see Jennings with anything in his hands. He further testified that the house that had been burglarized had a lot of damage. He opined that it "looked like it was lived in at one time." He further stated that it looked like someone just went in the house and started "dismantling stuff." Officer Scaggs testified that neighbors told him that "as of three weeks previous, there had been people living in the house."

{¶14} Officer Richard Varndell testified that Officer Scaggs is his partner. Officer Varndell said that he and Officer Scaggs responded to the call at 4340 East 141st Street. He recalled that the description given over the radio was a black male wearing a gray shirt and blue pants. As they approached the area, he saw two males run toward the driveway of 4337 East 141st Street. Officer Varndell ran one way and Officer Scaggs ran another way. Officer Varndell did not catch any of the males.

{¶15} Officer Varndell stated that they secured Jennings in the back of the police vehicle. They then walked to the house that had been burglarized. He said that the interior of the house had been "trashed" and that items were "thrown throughout every room." He said that they did find some mail in the living room; some of it was "only a few weeks old." Officer Varndell stated that they learned "that the occupant of that home had moved." But he also said that he had heard that the people who lived there were out of town.

{¶16} Officer Varndell testified that after they left the burglarized house, they went back to 4337 East 141st Street. They found "a window air conditioner unit, a blue tub full of cut out copper piping, some sinks, faucet."

{¶17} Officer Varndell admitted on cross-examination that he and his partner never took the items they found in the backyard of 4337 East 141st Street to the house that had been burglarized to see if they "fit" in the missing places. He further admitted that he could not say for sure that the items that they found were from the burglarized home.

{¶18} At the close of the state's case, Jennings moved for a Crim.R. 29 acquittal on all counts. The trial court granted it with respect to Count 1, burglary, but denied it with respect to Counts 2, 3, and 4 (theft, possessing criminal tools, and vandalism).

{¶19} After Jennings rested, the trial court found him guilty of theft as charged in the indictment, but not guilty of vandalism or possessing criminal tools.

{¶20} The trial court sentenced Jennings to one-and-a-half years of community control supervision (Group C) and ordered him to pay $3,300 in restitution to the victim. It is from this judgment that Jennings appeals.

### Sufficiency of the Evidence

{¶21} In his first assignment of error, Jennings maintains that the trial court erred when it denied his Crim.R. 29 motion with respect to theft. He argues that the state failed to present sufficient evidence to establish that he stole anything, nor was there any evidence regarding the value of the property stolen.

**{¶22}** Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390 (Cook, J., concurring). In making this determination, an appellate court must:

> examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶23}** Jennings was convicted of theft under R.C. 2913.02(A)(1), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." The theft count included a furthermore clause (which elevated the offense to a fourth-degree felony) that the victim of the offense was an elderly person and that the value of the property stolen was between $1,000 and $7,500.

**{¶24}** Jennings first challenges the state's evidence that he committed a theft. He maintains that the state failed to prove that he stole anything out of the victim's home.

**{¶25}** The state presented evidence from Crowder's neighbor, Stewart, that she saw Jennings (who she knew as her neighbor, K.B.) carrying a lamp out of Crowder's home to a house across the street. The police found several items — that Crowder

identified as taken from her home — in the backyard of the house across the street from Crowder's. Jennings acknowledges that police found several items, but maintains that police never found a lamp with the other property items that were found. While this is true, it does not mean that the state failed to present sufficient evidence of theft. The statute does not require the state to enter the stolen items into evidence. It merely requires the state to prove, through direct or circumstantial evidence, that Jennings knowingly exerted control over Crowder's property, without her consent, and with the purpose to deprive Crowder of that property. The state did so here.

**{¶26}** Jennings next argues that the state did not prove the value of the property taken. We disagree.

**{¶27}** Under R.C. 2913.61(D), "the following criteria shall be used in determining the value of property or services involved in a theft offense: (2) The value of personal effects and household goods, * * * is the cost of replacing the property with new property of like kind and quality." "[C]ircumstantial evidence, including photographs of personal property, may be used to prove the value of stolen items in a theft offense." *State v. Pesec*, 11th Dist. Portage No. 2006-P-0084, 2007-Ohio-3846, ¶ 40. *See also State v. Jones*, 5th Dist. Tuscarawas No. 2002-AP-05-0041, 2003-Ohio-445 (finding trial court properly admitted victim testimony regarding value of the stolen property); *State v. Allen*, 5th Dist. Stark No. 2002CA00059, 2003-Ohio-229 (finding trial court properly permitted witnesses to testify to value of stolen items); and *In re Lame*, 11th Dist. Portage  Nos.

96-P-0256, 96-P-0266, and 96-P-0267, 1998 Ohio App. LEXIS 4532 (Sept. 25, 1998) (finding proper replacement value based on trial testimony from theft victims).

{¶28} The state introduced numerous photos of Crowder's home where fixtures and copper piping were missing, as well as photos of property that were found in the neighbor's yard. Crowder identified the items in the photos that were missing, as well as items that were found in the yard. She testified that the items found lying the yard had been taken out of her home.

{¶29} Further, Crowder testified that she obtained an estimate as to what it would cost to replace and fix everything in her home; it was $10,000. Although some of this money was for repairs, this evidence was sufficient — in a light most favorable to the state — to establish that Crowder had at least $1,000 of property taken from her home.

{¶30} At oral argument, Jennings raised an issue with respect to sufficiency of the evidence that he did not raise in his brief. He argued that the state failed to present sufficient evidence regarding the elderly specification because it failed to establish Crowder's age. We agree.

{¶31} To convict Jennings of theft from an elderly person, the state, in addition to establishing the theft offense and the value of the property, was required to prove that the victim was 65 years of age or older. R.C. 2913.01(CC). Although Crowder testified that she owned her home for 50 years, that does not establish that she is at least 65 years old. Accordingly, the state only presented sufficient evidence of the theft offense and the

value of the property being between $1,000 and $7,500. This makes Jennings's theft offense a fifth-degree felony instead of a fourth-degree felony. R.C. 2913.02(B).

{¶32} Accordingly, Jennings's first assignment of error is sustained in part and overruled in part.

### Manifest Weight of the Evidence

{¶33} In his second assignment of error, Jennings contends that his conviction for theft was against the manifest weight of the evidence. He argues that there was no credible evidence "linking" him to the crime of theft. He claims that a "miscarriage of justice occurred."

{¶34} In reviewing a claim challenging the manifest weight of the evidence:

> [t]he question to be answered is whether there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (Quotes and citations omitted.)

*State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81. In making this determination, this court is mindful that "[e]valuating the evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466, 646 N.E.2d 1156 (9th Dist.1994).

{¶35} After review, we disagree with Jennings's argument that his theft conviction is against the manifest weight of the evidence. The trial court heard evidence from Stewart, Crowder's neighbor, that Stewart saw "K.B." taking things out of Crowder's

house and carrying them across the street. Stewart identified "K.B." in court as Jennings, stating that she knew him because he was her neighbor; he lived two doors down from her in the opposite direction from where Crowder lived.

{¶36} Crowder also testified that many items had been taken from her house, including copper piping throughout the house, a window air-conditioning unit, and several kitchen fixtures. Police found many of these items in the backyard of the neighbor who lived across the street from Crowder — exactly where Stewart saw Jennings walking with items from Crowder's house.

{¶37} Accordingly, after reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find that the trial court, as the factfinder, did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶38} Jennings second assignment of error is overruled.

Restitution

{¶39} In his third assignment of error, Jennings maintains that the trial court erred when it ordered him to pay $3,300 in restitution to the victim without a hearing and when it failed to determine in a hearing that he had the ability to pay the restitution.

{¶40} We review an order of restitution for an abuse of discretion. *State v. Marbury*, 104 Ohio App.3d 179, 181, 661 N.E.2d 271 (8th Dist.1995).

{¶41} Jennings argues that his trial counsel informed the court that he was applying for social security disability. Jennings further points out that the trial court was

aware that he was indigent because it appointed counsel for him at his arraignment and for purposes of appeal.

{¶42} R.C. 2929.18(A)(1) authorizes the trial court to impose restitution, based upon the victim's economic loss, as a financial sanction. The statute provides, in pertinent part:

> If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount.

{¶43} Ohio courts have expressly held that the fact that a defendant is indigent does not prohibit trial courts from imposing financial sanctions, including restitution. *See State v. Cooper*, 11th Dist. Lake No. 2002-L-091, 2004- Ohio-529, ¶ 16; *State v. Moore*, 12th Dist. Butler No. CA2002-12-307, 2003-Ohio- 6255, ¶ 37; *State v. Coleman*, 8th Dist. Cuyahoga No. 82394, 2004-Ohio-234, ¶ 35. Thus, the fact that appellant is indigent is not a bar to the imposition of restitution.

{¶44} Prior to imposing restitution, a trial court "shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(6). There must be some evidence in the record the trial court considered defendant's present and future ability to pay the sanction. *State v. Cosme*, 8th Dist.

Cuyahoga No. 90075, 2008-Ohio-2811, ¶ 34. "'While a court is neither required to hold a hearing to make this determination nor to indicate in its judgment entry that it considered a criminal defendant's ability to pay, there must be some evidence in the record to show that the court did consider this question.'" *Id.*, quoting *State v. Berry*, 6th Dist. Lucas No. L05-1048, 2007-Ohio-94.

{¶45} At Jennings's sentencing hearing, defense counsel informed the court:

As Mr. Jennings stands here now he is really, he's on a disability, your Honor. He is trying to get this disability for social security. He's been trying to get it for 18 months and he has not been able to get it. He is receiving SSI. There is a lump sum of money they owe him he is trying to get.

{¶46} Jennings then spoke to the court, admitting that he "made some very bad decisions" in his past. But Jennings explained that he is "trying to do better," and stated he has "a stable income now" and a "stable residence."

{¶47} The trial court imposed one-and-a-half years of community control sanctions and ordered that Jennings pay $3,300 in restitution to the victim. Defense counsel objected to the restitution, arguing that there was no evidence in the record that the victim had $3,300 in economic loss. The state responded that the victim provided the court with a letter for sentencing where she listed the cost to replace the items that were stolen from her home, including $3,300 for copper piping. The state further stated that the trial court made a specific finding that Jennings removed copper piping from the victim's home. The trial court overruled Jennings's objection and ordered that he pay $3,300 in restitution.

**{¶48}** After review, we find that there was "some evidence" in the record that the trial court considered Jennings's present and future ability to pay the restitution. We further find that the trial court based the amount of restitution on an amount recommended by the victim in her letter, i.e., the amount it would cost her to replace the copper piping.

**{¶49}** Accordingly, Jennings's third assignment of error is overruled.

**{¶50}** Because we sustained Jennings first assignment of error in part, which makes his theft offense a fifth-degree felony rather than a fourth-degree felony, Jennings must be resentenced.

**{¶51}** Judgment affirmed in part and reversed in part with respect to the elderly specification and remanded for resentencing on a fifth-degree felony theft offense.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

___

MARY J. BOYLE, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
PATRICIA ANN BLACKMON, J., CONCUR