[Cite as *State v. Kingsbury*, 2016-Ohio-590.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 102973

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**IAN W. KINGSBURY**

DEFENDANT-APPELLANT

**JUDGMENT:**
CONVICTION AFFIRMED; RESTITUTION ORDER VACATED; REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-591789-A

**BEFORE:** Keough, P.J., E.T. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** February 18, 2016

**ATTORNEY FOR APPELLANT**

Brian R. McGraw
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Lon'Cherie' D. Billingsley
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1}   Defendant-appellant, Ian Kingsbury, appeals from the trial court's judgment, rendered after a bench trial, finding him guilty of aggravated robbery, kidnapping, tampering with evidence, and intimidation of a crime victim, and sentencing him to three years incarceration.   We affirm Kingsbury's convictions, but reverse that part of the judgment ordering restitution in the amount of $41,000.

## I.   Background

{¶2}   Kingsbury was charged in a four-count indictment with aggravated robbery in violation of R.C. 2911.01(A)(1), kidnapping in violation of R.C. 2905.01(A)(2), tampering with evidence in violation of R.C. 2921.12(A)(1), and intimidation of a crime victim or witness in violation of R.C. 2921.04(B)(1).   Kingsbury pled not guilty, waived his right to a jury trial, and the matter proceeded to a bench trial.

{¶3}   At trial, Timothy Riha, the owner of the Upper Deck, a sports bar in Berea, testified that Kingsbury had worked on and off for him for eight years and knew that he kept cash in his desk and in a cabinet in his office.   On the morning of November 19, 2014, Kingsbury was working as a cleaner at the Upper Deck. Riha testified that Kingsbury left with the bartender around 5 a.m.   Moments later, as Riha was sitting in his second-floor office, Kingsbury appeared in the office with a man who was wearing a surgical mask and carrying a crowbar.   The masked man, later identified as Marcus Hill, forced Riha down the stairs and into the women's restroom, where Kingsbury tied him up with tape.   Riha testified that after the masked man and Kingsbury left, he struggled and got free, but just as he freed himself, the masked man returned and tied him up again.   When he broke free a second time, the masked man and Kingsbury tied him up again.  Eventually he broke free again, ran up to his office, locked the door behind him, and called 911.

Riha testified that his office had been ransacked, the phone and video surveillance equipment were disconnected, and $56,000 in cash was missing. On cross-examination, he stated that he had received a $15,000 payment from the insurance company for his loss.

{¶4} The next day, Riha reviewed the surveillance video with Dennis Bort, a detective with the Berea police department. After viewing the footage, both Riha and Det. Bort believed that Kingsbury had participated in organizing and executing the robbery. Det. Bort testified that Kingsbury's oral and written statements about the robbery were not consistent with the video. Although at one point the video showed Kingsbury walking with his hands up, it was not consistent with his statement that the masked man had "dragged" him through the kitchen and up the stairs. The video also showed that at one point, when the masked man was heading in the wrong direction, Kingsbury directed the masked man upstairs, where the office was located. The video also showed that Kingsbury was left alone, unrestrained, on the second floor of the Upper Deck, but did not go into the office and lock the door to try to escape. In fact, the video demonstrated that Kingsbury was left unattended for seven of the eleven minutes of the robbery shown on the videotape. In addition, the video demonstrated that while Riha was tied up in the bathroom, the masked man did not use any force on Kingsbury.

{¶5} The video also demonstrated that Kingsbury was making telephone calls on his cell phone at various times during the robbery. Kingsbury told Det. Bort that he had called his mother for a ride home, but Det. Bort testified that the telephone records he subsequently obtained demonstrated that Kingsbury never called her. Det. Bort testified further that Kingsbury initially told him that the masked man had confronted him at the dumpster behind the Upper Deck as he was taking out the garbage, but upon questioning, Kingsbury told Det. Bort that he did not have a key to the back door. When the detective pointed out that the dumpster

was eight to ten feet away from the back door, and that Kingsbury and the masked man would have been locked out if he did not have a key, Kingsbury changed his story and told Det. Bort that he must have dropped the garbage when the masked man confronted him when he opened the back door. Det. Bort testified that the police found no garbage by the back door, however.

{¶6} Phyllis Brainard, Kingsbury's mother, testified that on November 19, 2014, she and Kingsbury were living with her sister Louise Casino. Brainard testified that her brother Raymond Casino and his friend Marcus Hill would sometimes stay there too. She testified that she woke up around 5 a.m. that day, thinking it was odd that Kingsbury had not called her for a ride home because she always took him to work and picked him up. As she was standing in the living room, she looked out the window and realized that her car was missing. Almost immediately, Marcus, who had driven her car home, walked in the house. Brainard testified that Marcus was "stunned" to see her because he realized that she now knew that he had driven her car without her permission.

{¶7} Brainard then drove to the Upper Deck to pick up Kingsbury. The police told her they were taking Kingsbury in for questioning, however, and would drop him off later. Brainard said that when Kingsbury returned home later that morning, he went to her computer and unscrewed the back of the tower, where she saw stacks of money hidden in clear ziploc bags. Brainard said that she started crying and told Kingsbury to give the money back, but Kingsbury threatened her if she told anyone about the money. She testified further that Kingsbury told her that his cut from the robbery was $20,000, and that Marcus and her brother Raymond split $30,000.

{¶8} Kathleen Kingsbury, Kingsbury's sister, testified that she visited her brother at her aunt's house on November 29, 2014. Appellant's friend Ernie was also there. Kathleen

testified that Kingsbury, a drug addict, was high during her visit, and that he and Ernie were bragging to her that Kingsbury had stolen the five-inch high stacks of money that she saw on the table from the Upper Deck.

{¶9} Kingsbury's aunt, Louise Casino, testified that when her sister Phyllis returned home on November 19 after going to pick up Kingsbury from the Upper Deck, she told Louise that there had been a robbery. At around 7 a.m., Louise drove Marcus and Raymond to an appointment. Louise said that during the ride, Marcus mentioned that the robbers had supposedly used a crowbar, and when she got home, she discovered that the crowbar normally stored in her garage was missing.

{¶10} Louise testified further that on November 30, 2014, Kingsbury was "tearing things up in the house" and screaming that she had stolen his money. She said that when she picked him up from the hospital a few days later, he told her that he had $20,000 but it was all gone.

{¶11} The trial court found Kingsbury guilty of all charges as indicted. At sentencing, the court sentenced him to a total of three years incarceration, and ordered that he pay $41,000 in restitution. This appeal followed.

## II. Analysis

### A. Restitution

{¶12} In first assignment of error, Kingsbury contends that the trial court erred in ordering that he pay $41,000 in restitution. We review for plain error because Kingsbury raised no objection to the restitution order at sentencing.

{¶13} Under Crim.R. 52(B), plain errors affecting substantial rights may be noticed by an appellate court even though they were not brought to the attention of the trial court. But the plain error doctrine should be invoked by an appellate court only in exceptional circumstances to

prevent a miscarriage of justice. *State v. Cooperrider*, 4 Ohio St.3d 226, 227, 448 N.E.2d 452 (1983). Plain error will be recognized only where but for the error, the outcome of the case would clearly have been different. *Id.*

{¶14} R.C. 2929.18(A)(1) authorizes the trial court to impose financial sanctions as part of its sentence, including restitution in an amount based upon economic loss. The court shall determine the amount of restitution to be made by the offender. *Id.* The court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim. *Id.* To ensure a lawful award, there must be competent, credible evidence in the record to support the trial court's order of restitution to a reasonable degree of certainty. *State v. Summers*, 2d Dist. Montgomery No. 21465, 2006-Ohio-3199, ¶ 44.

{¶15} Kingsbury contends that the trial court erred in ordering that he pay $41,000 in restitution because there was no reliable testimony regarding the amount of economic loss. He argues that Riha offered differing amounts of the amount of cash stolen from his office to the police. He further contends that there was no evidence regarding whether the insurance company payout of $15,000 was the policy limit or the insurance company's opinion of Riha's total loss. Therefore, he contends that while it might be reasonable to conclude that Riha suffered some loss, there is no reliable testimony regarding the exact amount of loss.

{¶16} The trial court's order that Kingsbury pay $41,000 in restitution was based on Riha's testimony that he suffered $56,000 in loss, less the $15,000 paid by his insurance company. In his testimony, Det. Bort acknowledged that on the morning of the robbery, Riha

told one officer that $40,000 was missing and another officer that $30,000 had been stolen. Nevertheless, Riha testified under oath at trial that $56,000 was stolen during the robbery. His testimony only supported $55,000 in losses, however: he explained that he knew there was $51,000 in one bag, $3,000 in lottery receipts in another bag, and $1,000 in coins that he had collected over the years.

{¶17} However, despite Kingsbury's argument otherwise, the record supports the trial court's finding that the insurance company paid the policy limits of $15,000 for Riha's loss. Riha testified that he was insured for $15,000 in losses, and the insurance company paid that amount for his loss. (Tr. 69-70.)

{¶18} In light of Riha's testimony, we find that there was competent and credible testimony to support $55,000 in loss. That loss, less the $15,000 in insurance proceeds, would support a restitution order of $40,000, however, not $41,000 as ordered by the trial court.

{¶19} Moreover, when imposing financial sanctions under R.C. 2929.18, a trial court must consider an offender's present and future ability to pay. The trial court need not hold a separate hearing nor consider any express factors or make any specific findings, but there must be some evidence in the record that the court at least considered the offender's present and future ability to pay before imposing restitution. *State v. Bemmes*, 1st Dist. Hamilton No. C-010522, 2002-Ohio-1905, ¶ 8-9.

{¶20} Because the record does not support the trial court's $41,000 restitution order, and there is nothing in the record indicating that the trial court gave any consideration to Kingsbury's ability to pay before entering the order, we find that the court's restitution order was plain error. The first assignment of error is sustained.

B.      Ineffective Assistance of Counsel

**{¶21}** In his second assignment of error, Kingsbury asserts that he was denied his constitutional right to effective assistance of counsel because counsel did not object to the restitution order. To establish ineffective assistance of counsel, a defendant must show that counsel's representation was deficient in that it "fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 694.

**{¶22}** Although a court must give great deference to counsel's performance in evaluating a claim of ineffective assistance of counsel, *Strickland* at 689, in this case we conclude that counsel's failure to object to the $41,000 restitution order at sentencing was ineffective assistance.

**{¶23}** As noted above, there is nothing in the record indicating that the trial court considered Kingsbury's ability to pay before ordering restitution. Thus, counsel should have objected to the order that Kingsbury — a drug addict who only worked sporadically over the last eight years and was now sentenced to three years in prison — pay $41,000 in restitution. Counsel's failure to object fell below an objective standard of reasonableness. Furthermore, there is a reasonable probability that if counsel had objected, the amount of the restitution order would have been different. The second assignment of error is sustained.

C.  Manifest Weight of the Evidence

{¶24} In his third assignment of error, Kingsbury contends that his convictions are against the manifest weight of the evidence. He argues that Riha was apparently convinced that he was not involved in the robbery because he continued to work at the Upper Deck for a week after the robbery. He further asserts that the video suggests that he was merely a victim of the masked man rather than a perpetrator of the robbery.

{¶25} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bland*, 8th Dist. Cuyahoga No. 101631, 2015-Ohio-2388, ¶ 15. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶26} This is not that exceptional case. Riha testified about what happened during the robbery, including that Kingsbury tied him up in the bathroom. Kingsbury's sister testified that he admitted that he robbed the Upper Deck. And his mother testified that he told her that his cut from the robbery was $20,000. Furthermore, the video refutes Kingsbury's assertion that he was a victim of the masked man, instead of a perpetrator. Kingsbury's behavior on the video is not that of a victim; the video demonstrates that he did, in fact, voluntarily participate in the robbery. The third assignment of error is overruled.

{¶27} Kingsbury's convictions are affirmed. The first and second assignments of error having been sustained, that part of the trial court's judgment ordering that Kingsbury pay $41,000 in restitution is reversed, and the matter is remanded for reconsideration of Kingsbury's

ability to pay restitution and the amount of restitution ordered. The trial court's judgment is affirmed in all other respects.

**{¶28}** Conviction affirmed; restitution order reversed; remanded.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
PATRICIA ANN BLACKMON, J., CONCUR