[Cite as *State v. Lenard*, 2018-Ohio-3365.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105998**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**RICHARD LENARD**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART; VACATED IN PART;
AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-15-599742 and CR-16-602457-A

**BEFORE:** Keough, J., E.T. Gallagher, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 23, 2018

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Jonathan Block
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

**{¶1}** Defendant-appellant, Richard Lenard, appeals his convictions and sentence. For the reasons that follow, we affirm in part, vacate in part, and remand for further proceedings.

## I. Procedural History and Facts

**{¶2}** In Cuyahoga C.P. No. CR-15-599742, Lenard was named in a six-count indictment charging him with securing writings by deception, identity fraud, tampering with records, theft, and two counts of forgery. An elderly and value specification was attached to some of the counts. In Cuyahoga C.P. No. CR-16-602457, Lenard was named in a three-count indictment charging him with burglary, grand theft, and securing writings by deception. A value specification was attached to two of the counts. The cases stem from real estate transactions in Euclid and Parma where Lenard acted as the seller or an agent to the seller. The cases were consolidated over objection and tried before a jury where the following evidence was presented; additional facts will be discussed within the relevant assignments of error.

### A. The Euclid Property

**{¶3}** In early 2015, Philip Ray Bentley ("Philip") wanted to make a property investment as part of his wife's retirement plan (collectively, "the Bentleys"). Philip testified that he found a home in Euclid, Ohio listed on Craigslist, and called the contact — Ryan Smith. According to Philip, Smith told him that he was selling the home on behalf of his uncle. Smith gave Philip the combination to the lockbox on the home's door, and Philip went to the property with his son. According to Philip, the house had extensive water damage and black mold. Nevertheless, Philip offered Smith $13,000 to purchase the residence, which Smith accepted.

**{¶4}** The Bentleys met Smith at a restaurant in Twinsburg for Philip's wife, Blanche, to sign a purchase agreement. Blanche testified that she did not really understand the document,

but just signed it after her husband reviewed it and advised her to sign. She stated that she voluntarily signed the purchase agreement on April 25, 2015, and it was her understanding that they were buying a house.

{¶5} At the suggestion of Smith, the Bentleys used General Title Services. Michael Gray from the title company contacted Philip, and based on the conversation, Philip believed that a title search of the property would be performed. A few days later, Smith called the Bentleys to arrange a meeting at his Beachwood office for the payment of $3,000 earnest money. Philip testified that he met with a woman named Maria and presented her with a $3,000 check made payable to General Title Services. Subsequently, Smith contacted Philip and advised that the contract on the house was ready to close. Philip was instructed to bring two checks to closing — one for $771 payable to General Title Services, and the other for $10,000 payable to Riviera Funding.

{¶6} On May 11, 2015, the Bentleys met with Maria and a notary public. The checks were given to Maria, and Blanche voluntarily signed the closing disclaimer after Philip reviewed the documents and advised her to sign them. According to Philip, he was told by Smith, Gray, and Maria that there were no liens on the property, and that the lien listed on the closing disclaimer had been removed. Philip testified that based on these assertions, he believed the house passed the title search. The Bentleys both testified that they believed they purchased the Euclid property after this meeting.

{¶7} The Bentleys invested $4,000 to start repairing their home. A few weeks later, however, the Bentleys received a foreclosure notification regarding the property. Philip called Smith, who told him there was no need for concern because the notification involved his uncle's credit card. Later, however, Philip discovered an $80,000 lien on the property and that the true

owner was Bank of America.   He stated that he tried to contact Smith again, but Smith's telephone number was no longer in service.   The Bentleys had to abandon the property.

{¶8} Believing that the sale of the house was fraudulent, Philip started his own investigation and discovered that Riviera Funding was owned by Richard Lenard.   After speaking with the notary who was present at closing, he learned that a man named "Richard" was involved in flipping houses.   Based on this information, Philip searched for a "Richard Lenard" on Facebook, and his search revealed a Richard Lenard whom he recognized and knew as "Ryan Smith."   The Bentleys subsequently filed a report with Beachwood police.

{¶9} Detective Allan Baumgartner testified that he investigated the Bentleys' complaint against Ryan Smith a.k.a. Richard Lenard.   As part of his investigation, he reviewed auditor records and the documents provided by the Bentleys that the seller, Antoun Saydeh ("Saydeh") signed.   He contacted Saydeh and questioned him about the details of the property, reviewed documentation that Saydeh allegedly signed, and presented Saydeh with surveillance photographs taken from Huntington Bank.   Based on his investigation, Detective Baumgartner believed the real estate transaction was fraudulent.

{¶10} Saydeh testified that in early 2005 he was contacted by the bank regarding his Euclid property.   He was advised that if he signed a quitclaim deed, his property foreclosure would be completed.   Saydeh testified that he met with Richard Kelly ("Kelly"), who presented him with a quitclaim deed, which he signed.   Surveillance still-photographs showed Saydeh at Huntington Bank with the man he knew as Kelly.   When presented with   documents pertaining to lead-based paint and residential property disclosures, and a standard purchase agreement, Saydeh testified that the signature on the documents was not his. He stated that he did not sign or

authorize anyone to sign those documents on his behalf. At trial, Saydeh identified Lenard as the man he knew as Kelly.

{¶11} Maria Mhoon testified that she was hired by Lenard to facilitate real estate transactions. At Lenard's request, she would meet with individuals, present them with documentation to sign, and collect any checks. Specific to the Bentleys, she stated that she met with the Bentleys at Lenard's instruction and presented them with documentation to sign. She stated she accepted checks from them and also presented them with a check. Mhoon testified that she gave all signed documents and checks to Lenard.

## B. The Parma Property

{¶12} In 2014, Milolijub Matic ("Matic") wanted to purchase a home for his daughter and granddaughter. He saw an internet advertisement regarding a home for sale in Parma, Ohio. He met with Richard Lenard, managing member of AMC Financial, who showed him the property and subsequently negotiated an agreement to purchase the home. Matic agreed to a land-sale contract to purchase the home for $34,000, with $15,000 as a down payment with an agreement to pay $1,000 per month for one year. At the end of the year, a balloon payment of $7,900 was required. Matic presented Lenard with a cashier's check for $15,150 payable to Cleveland Title Agency, and then made the monthly $1,000 payments payable to AMC Financial.

{¶13} When Lenard requested the balloon payment at the end of September 2015, Matic became suspicious because he received documentation from Lenard that he did not remember signing. Matic consulted with attorney Alex Rakic, who advised him that Midland Bank had a lien against the property. The bank ultimately took possession of the Parma property. Matic testified that he had to purchase the property from the bank to become the rightful owner. As

part of the police investigation, Matic was presented with a photo array from which he identified Lenard as the man who sold him the home.

{¶14} Attorney Rakic testified that his research revealed the presence of a lien on the property, that the land-contract agreement between AMC Financial and Matic was never recorded with the county auditor's office, and that AMC Financial was not a registered company with the Ohio secretary of state.

{¶15} At the close of the state's case, the trial court granted Lenard's Crim.R. 29 motion for acquittal on the burglary offense as charged in Count 1 in CR-16-602457 (Parma case). The jury found Lenard guilty of the remaining counts of grand theft and securing writings by deception, including the furthermore specifications attendant to both counts that the value of the property was $7,500 or more but less than $150,000.

{¶16} In CR-15-599742 (Euclid case), the jury found Lenard not guilty of identity fraud and one count of forgery, but guilty of the remaining counts — securing writings by deception, tampering with records, theft, and forgery. In each of those counts, the jury found that the value of the property was $7,500 or more but less than $37,500, but found that the victim was not an elderly person, making the offenses fourth-degree felonies.

{¶17} The trial court sentenced Lenard to 12 months in CR-15-599742 to be served consecutively to 12 months imposed in CR-16-602457. The sentences were also ordered consecutive to cases unrelated to this appeal — CR-15- 597800 (16 months), CR-15-602350 (6 years), and CR-15-602274 (7 years) — for a total sentence of 16 years and 4 months. Additionally the court ordered restitution in the amount of $13,000 to the Bentleys, and $27,000 to Matic.

{¶18} Lenard now appeals, raising eight assignments of error.

## II. Other Acts Evidence

**{¶19}** Prior to trial, the state filed a notice of intent to introduce other acts evidence pursuant to Evid.R. 404(B), specifically to introduce testimony through Detective David Sword, that Lenard used an alias in these cases that he also used in a prior real estate transaction in North Royalton where theft was alleged. The state maintained that the evidence would show a pattern of activity and an intent to defraud. The defense objected, contending that the evidence would be unduly prejudicial. The trial court granted the state's request, but limited the testimony only to the North Royalton matter. In his first assignment of error, Lenard contends that the trial court erred by allowing this testimony.

**{¶20}** "The trial court has broad discretion in the admission and exclusion of evidence, including evidence of other acts under Evid.R. 404(B)." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, citing *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 22. Reviewing courts should be "slow to interfere" unless the trial court "clearly abused its discretion and the defendant has been materially prejudiced thereby[.]" *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). "Abuse of discretion" is an "'unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken.'" *Kirkland* at ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

**{¶21}** Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is permitted to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. Additionally, R.C. 2945.59 provides that:

> [i]n any criminal case in which the defendant's motive or intent, the absence of
> mistake or accident on his part, or the defendant's scheme, plan, or system in

doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶22}** In deciding whether to admit other acts evidence, trial courts should conduct a three-step analysis:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. * * * The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

**{¶23}** Applying this test to the challenged testimony, we find no abuse of discretion by the trial court. First, Lenard's use of the same fictitious name in a prior real estate transaction in North Royalton is relevant to refute Lenard's defense that he was an innocent party receiving the blame for actions the Bentleys, Saydeh, and Matic knowingly undertook. The testimony demonstrated that Lenard had knowledge of his actions. The evidence was also introduced for a

valid purpose — to prove identity, an absence of mistake, and provided context in identifying Lenard.

**{¶24}** Finally, the probative value is not outweighed by any unfair prejudice, and Lenard fails to identify how he was prejudiced by this testimony. The trial court mitigated any potential prejudice by providing prior to Detective Sword's testimony a limiting instruction that ordered the jury to not consider other acts evidence for any improper purpose. (Tr. 803-804.) The court also gave the jury a final instruction regarding other acts evidence. (Tr. 1000-1001.) It is presumed that the jury followed these limiting instructions. *See State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 194.

**{¶25}** Accordingly, the trial court did not abuse its discretion in allowing this other acts testimony. Lenard's first assignment of error is overruled.

### III. Pretrial Identification

**{¶26}** Lenard contends in his second assignment of error that the trial court erred by admitting Matic's pretrial identification when he was unable to identify Lenard in court. Lenard makes two arguments: (1) that the admission of the photo array was improper because the exhibit was not authenticated; and (2) Matic's pretrial identification was unduly suggestive.

**{¶27}** Matic's inability to identify Lenard at trial is irrelevant. Generally, there is no requirement that a witness must make an in-court identification of a defendant in criminal cases because the accused's identity can be established through direct or circumstantial evidence. *In re A.W.*, 8th Dist. Cuyahoga No. 103269, 2016-Ohio-7297, ¶ 28, citing *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶ 19; *State v. Lawwill*, 12th Dist. Butler No. CA2007-01-014, 2008-Ohio-3592, ¶ 11.

{¶28} Evid.R. 901 requires the authentication or identification of evidence as a condition precedent to admissibility. Testimony of a witness with knowledge "that a matter is what it is claimed to be" is sufficient to authenticate the purported evidence. Evid.R. 901(B)(1). Courts have interpreted this subsection of the rule to allow "any competent witness who has knowledge that a matter is what its proponent claims may testify to such pertinent facts, thereby establishing, in whole or in part, the foundation for identification." *State v. Black*, 7th Dist. Mahoning No. 16 MA 0085, 2018-Ohio-1342, ¶ 14, quoting *TPI Asset Mgt. v. Conrad-Eiford*, 193 Ohio App.3d 38, 2011-Ohio-1405, 950 N.E.2d 1018, ¶ 15 (2d Dist.). We review the court's ruling on the adequacy of authentication for an abuse of discretion. *State v. Bowling*, 8th Dist. Cuyahoga No. 93052, 2010-Ohio-3595, ¶ 33, citing *State v. Easter*, 75 Ohio App.3d 22, 26-27, 598 N.E.2d 845 (4th Dist.1991).

{¶29} In this case, Matic testified that state's exhibit No. 75 was the photo array he was shown at the Parma police station after making his report. He recalled that he was asked to identify the person who sold him the Parma property. Matic testified that he made a circle underneath the identified photograph. And Detective John Porec testified that he investigated the report made by Matic regarding the sale of the Parma real estate. He stated that he met with Matic, and a blind administrator presented Matic with a photo array that included Lenard's picture. According to Detective Porec, Matic identified Lenard from the photo array. The photo array was therefore properly admitted.

{¶30} Lenard also contends on appeal that the photo array identification was unduly suggestive. This argument was not a basis for Lenard's objection below, thus waiving all but plain error on appeal. We find no plain error because Detective Porec explained how the photo lineup was created, and the lineup was presented to Matic through the use of a blind

administrator. Matic selected the individual he believed to be Lenard based on his interactions with Lenard during the purchase of the Parma property. The totality of circumstances demonstrate that the identification was reliable. Moreover, Matic was subject to cross-examination during trial and any alleged defect or unreliability with his photo array identification could have been questioned.

**{¶31}** Accordingly, Lenard's second assignment of error is overruled.

### IV. Sufficiency of the Evidence

**{¶32}** Lenard contends in his third assignment of error that his convictions are not supported by sufficient evidence, and the trial court erred by denying his motions for acquittal.

**{¶33}** A Crim.R. 29 motion challenges the sufficiency of the evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-829, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus

### A. The Euclid Property

{¶34} Lenard was convicted of three offenses pertaining to the Euclid property — securing writings by deception in violation of R.C. 2913.43(A), tampering with records in violation of R.C. 2913.42(A)(1), and theft in violation of R.C. 2913.02(A)(3).[1]

{¶35} Lenard contends that insufficient evidence was presented to support his convictions regarding the property because (1) Philip did not sign any of the Euclid property documents, (2) the documents that Blanche voluntarily signed disclosed (a) the lien and the pending foreclosure action on the Euclid property and (b) that only a quitclaim deed, rather than a warranty deed, would be executed; (3) Saydeh voluntarily signed a quitclaim deed as provided for in the purchase agreement; and (4) any statements regarding the status of the lien on the property was made by Mhoon and thus, cannot be attributed to him. We discern from these statements that Lenard contends that the state failed to prove the element of deceit.

{¶36} Pursuant to R.C. 2913.01(A), "deception" is defined as

knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.

{¶37} In Count 1, Lenard was convicted of securing writings by deception, which pursuant to R.C. 2913.43 prohibits a person, by the use of deception, to cause another to execute any writing that disposes of or encumbers property, or by which a pecuniary obligation is incurred. In Count 4, Lenard was convicted of theft, which pursuant to R.C. 2913.02(A)(3),

---

[1]We need not address the finding of guilt as to the forgery charge in Count 5 because that offense merged with the theft offense in Count 4, and the state elected that Lenard be sentenced on Count 4. *See State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14 (when counts in an indictment are allied offenses and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the reviewing court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless); *State v. Rucker*, 8th Dist. Cuyahoga No. 105628, 2018-Ohio-1832, ¶ 35.

provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * (3) By deception."

**{¶38}** Lenard's contention that Philip did not sign any of the real estate documents is irrelevant because both Philip and Blanche were the named victims. Sufficient testimony and evidence was presented to prove that Blanche signed the real estate documents pertaining to the Euclid property.

**{¶39}** Lenard's "buyer beware" or "caveat emptor" defense does not apply. In a civil context, caveat emptor only applies when the seller or vendor does not engage in fraud, despite defects being open and discoverable. *See Layman v. Binns*, 35 Ohio St.3d 176, 177, 519 N.E.2d 642 (1988). "An action for fraud may be grounded upon the failure to fully disclose facts of a material nature where there exists a duty to speak." *Id*. at 178.

**{¶40}** Although the documents Blanche signed disclosed the lien on the property and that no title search would be performed, the jury saw that the documents contained two noticeably different font and type sizes. The substantially smaller font size contained disclosures and the disclaimers. Specific to the standard purchase agreement, the smaller font size reads that the Title company does not "agree to or offer" any title services, including "title search(s)." The disclaimer also stated that the buyer was "told by a representative at General Title Services LLC of these facts." Blanche and Philip both testified that no one from General Title told them a title search would not be performed. The closing disclaimer also contains in the smaller font size that a mortgage and foreclosure existed on the property. Viewing the evidence in the light most favorable to the state, the jury could reasonably find that these documents presented by Lenard were deceptive.

{¶41} The state demonstrated that Lenard lied and deceived the Bentleys through the entire real estate transaction. He lied about his name and that he was selling the property for his uncle. He presented documentation to the Bentleys that he knew to be false. Even though the documentation arguably disclosed all the defects in title, the evidence demonstrated that Lenard had no authority to sell the property. Any statements made by Mhoon are attributed to Lenard because she was acting at his direction at all times. Moreover, even though the quitclaim deed was recorded, this does not make Lenard's actions lawful or legal; Lenard took the Bentleys' money through deception and false pretenses.

{¶42} In Count 3, Lenard was convicted of tampering with records in violation of R.C. 2913.42(A)(1), which provides that "[n]o person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * (1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record."

{¶43} Lenard knew he was not a representative of the bank, and that Saydeh did not have authority to sell the property because Saydeh had surrendered the property to the bank through a bankruptcy years prior. Moreover, sufficient evidence was presented that Lenard did not have permission to sign Saydeh's name to the residential property forms, the standard purchase agreement, or the lead-based paint addendum. Accordingly, sufficient evidence was presented to prove the offenses regarding the Euclid property.

{¶44} Lenard also contends that the degrees of the offenses were not supported by the jury verdicts. A furthermore specification was attached to Counts 1 and 4, wherein it was alleged that Lenard committed these offenses against an elderly person and the value was between $7,500 and $37,500. A finding of both would enhance an otherwise fifth-degree felony

to a felony of the third degree. The jury found that the victim was not elderly but that the value was between $7,500 and $37,500. Lenard maintains that the specification was an all-or-nothing specification to warrant enhancing the degree of the offenses, meaning that the jury had to find that the victim was elderly *and* the value of the property. We disagree.

{¶45} In *State v. Jennings*, 8th Dist. Cuyahoga No. 99631, 2013-Ohio-5428, this court modified a defendant's theft conviction that contained a specification that the victim was elderly and that the value of the property was between $1,000 and $7,500. Adding the furthermore clause enhanced the degree of the theft offense from a first-degree misdemeanor to a fourth-degree felony. This court found that the state failed to prove that the victim was an elderly person as defined under R.C. 2913.01(CC), but that the state presented sufficient evidence of the theft offense and the value of the property being between $1,000 and $7,500. Accordingly, this court modified the conviction to a fifth-degree felony, thus not applying an "all-or-nothing" approach to the specification.

{¶46} Our review of the record shows that the jury was asked to make two independent findings under the furthermore specification attendant to Counts 1 and 4 — whether the state proved that the victim was elderly and the value of the amount pilfered was between $7,500 and $37,500. The jury's finding that the value was over $7,500, but under $37,500, was sufficient to enhance the degree of the offense from a fifth-degree felony to a felony of the fourth degree.

**B.  The Parma Property**

{¶47} Regarding the Parma property, Lenard was convicted of two offenses — securing writings by deception in violation of R.C. 2913.43(A); and theft in violation of R.C. 2913.02(A)(3). Lenard contends that insufficient evidence was presented to support his convictions regarding the property because the documents that Matic signed voluntarily disclosed

a lien on the property, he moved into the residence, and he made payments pursuant to the terms of the installment contract. Again, Lenard maintains no deception occurred.

{¶48} The record reflects that Lenard employed the same tactics with Matic as he did with the Bentleys. He held himself out as the seller of the home, when in fact, he was not the owner. Lenard's false and deceptive statements induced Matic into signing a fictitious agreement to purchase real estate. Matic testified that he was not made aware of the lien on the property, and that he paid Lenard over $27,000 for property that Lenard did not own.

{¶49} Viewing the evidence in the light most favorable to the state, sufficient evidence was presented supporting Lenard's convictions in both cases. Accordingly, the assignment of error is overruled.

## V. Manifest Weight of the Evidence

{¶50} In his fourth assignment of error, Lenard contends that his convictions are against the manifest weight of the evidence.

{¶51} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶52}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶53}** Lenard contends that his convictions pertaining to the Euclid property are against the manifest weight of the evidence because Saydeh was not credible. Specifically, he argues that Saydeh executed a quitclaim deed even though he surrendered the property to Bank of America two years earlier in his bankruptcy proceeding. The jury was in the best position to view Saydeh's credibility and determine the weight to be given to his testimony based upon the circumstances and facts presented at trial.

**{¶54}** Lenard also contends that his convictions are against the manifest weight of the evidence for the same reasons he raised in his sufficiency challenge — the buyers knew what they were signing and were on notice of the liens. For the same reasons previously discussed, Lenard used deception to induce the Bentleys and Matic into executing documents to purchase real estate that Lenard had no authority to sell. Lenard's culpability cannot be diminished by the victims' innocent role in these cases.

**{¶55}** This is not the exceptional case where the jury clearly lost its way and created such a manifest miscarriage of justice that Lenard's convictions must be reversed and a new trial ordered. The jury's verdict of finding Lenard not guilty of certain offenses and specifications reveal that the jury reviewed the evidence, listened to the testimony, and held the state to its burden. Accordingly, Lenard's fourth assignment of error is overruled.

## VI. Authentication of Business Records

**{¶56}** "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within one of the exceptions listed in Evid.R. 803.

**{¶57}** Evid.R. 803(6) provides the "business records exception" to the hearsay rule and states that the following records are not excluded by the hearsay rule:

> memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian *or other qualified witness* or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. (Emphasis added).

This rule allows the admission of business records if they are made in the course of a regularly conducted business activity because the courts presume that such records are trustworthy given the self-interest to be served by the accuracy of such entries. *Weis v. Weis*, 147 Ohio St. 416, 425-426, 72 N.E.2d 245 (1947).

**{¶58}** In his fifth assignment of error, Lenard contends that the trial court erred by admitting and allowing Jim McKinley to authenticate business documents that he did not personally obtain and because he was not the records custodian. Lenard contends that the trial

court abused its discretion in admitting the documents because McKinley did not prepare the exhibits and was not familiar with how the records were made or stored. We disagree; McKinley was a qualified witness under Evid.R. 803(6).

{¶59} The phrase "other qualified witness" does not necessarily mean that the witness must have firsthand knowledge of the transaction giving rise to the record. *State v. Sherrills*, 8th Dist. Cuyahoga No. 89844, 2008-Ohio-1950, ¶ 31; citing *State v. Vrona*, 47 Ohio App.3d 145, 547 N.E.2d 1189 (9th Dist.1988).

> Rather, it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance, and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Rule 803(6).

*Sherrills* at *id.*, citing *State v. Shaheen*, 3d Dist. Hancock No. 5-97-03, 1997 Ohio App. LEXIS 3487 (July 29, 1997), citing *State v. Patton*, 3d Dist. Allen No. 1-91-12, 1992 Ohio App. LEXIS 997 (Mar. 5, 1992).

{¶60} McKinley testified that for the past 16 years he has worked in the field of financial investigations. Previously, he worked for Huntington Bank, but currently he works for U.S. Bank as a financial crimes investigator. He testified that as part of his investigative duties, he orders financial documentation through the bank's systems and reviews surveillance videos.

{¶61} McKinley stated that still photos can be taken from video, and information on the photograph will depict the branch where the video was taken, the time, and date. He testified that the surveillance videos are electronically stored at U.S. Bank's central office in Minnesota, but that he can access these videos kept in their ordinary course of business through the computer network system. McKinley then identified the still photographs taken from the surveillance video at two U.S. Bank locations, one taken on May 11, 2015 and the other on April 28, 2015.

He also identified the account documents for two accounts of which Lenard is the account holder — General Title Services and Riviera Funding L.L.C. According to McKinley, these documents are kept in U.S. Bank's ordinary course of business to which he has access.

{¶62} Based on McKinley's experience and duties at U.S. Bank, we find no abuse of discretion in allowing him to identify and authenticate the still photographs and account records. He did not testify about the contents of the documents, but only identified them as U.S. Bank records.

{¶63} Even assuming that McKinley lacked the ability to authenticate the records, Lenard has failed to demonstrate how he was prejudiced by the admission of the records. His defense theory was that the buyers knew what they were voluntarily signing and therefore, no deception occurred. He did not argue mistaken identity or that he was not the owner of General Title or Riviera Funding.

{¶64} Moreover, even if the records were excluded, other overwhelming admissible evidence was presented to support Lenard's convictions. Accordingly, any error would be harmless. *See* Crim.R. 52(A) ("any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded"); *State v. Williams*, 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983) (a reviewing court may overlook an error where the remaining admissible evidence, standing alone, constitutes "overwhelming" proof of a defendant's guilt). Lenard's fifth assignment of error is overruled.

## VII. Discovery Violation

{¶65} Saydeh testified during trial that he was shown photographs of Lenard through an email with a detective. At side-bar, defense counsel indicated that the emails between Detective Baumgartner and Saydeh were not provided to him through discovery. Accordingly, counsel

requested that either Saydeh's testimony be stricken or a mistrial be granted. Following the discussion, it was apparent that the prosecutor was also unaware of the email correspondence. Copies of the emails in which Saydeh made a photo identification of Lenard and compared his signatures were provided to the defense. The trial court determined that the least restrictive sanction for the discovery violation was a continuance, and asked defense counsel how much time he needed to review the documents and prepare. Counsel indicated he did not need additional time and withdrew the motion, but reiterated his dissatisfaction with the detective about withholding the information from all parties.

{¶66} In his sixth assignment of error, Lenard contends that the trial court erred by denying his request to dismiss or strike Saydeh's testimony based on the Crim.R. 16 violation. Because the motion for a mistrial or to strike the testimony was withdrawn, the assignment of error will be reviewed for plain error. In order to prevail under a plain error analysis, the appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id*. at paragraph three of the syllabus; Crim.R. 52(B).

{¶67} In this case, the trial court did not commit plain error. First, counsel withdrew his motion after reviewing the emails. Additionally, the court offered counsel time to review the documents and prepare accordingly; counsel declined the continuance. Finally, Lenard fails to demonstrate that the outcome of the trial clearly would have been different. The emails between the detective and Saydeh contained a photo identification and signature comparisons —

identifications that Saydeh also made at trial. Accordingly, Lenard's sixth assignment of error is overruled.

## VIII. Restitution Order

**{¶68}** Lenard contends in his seventh assignment of error that the trial court erred by ordering restitution that is not supported by evidence of actual economic loss.

**{¶69}** A trial court has discretion to order restitution in an appropriate case and may base the amount it orders on a recommendation of the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, but the amount ordered cannot be greater than the amount of economic loss suffered as a direct and proximate result of the commission of the offense. R.C. 2929.18(A)(1). A trial court is required to conduct a hearing on restitution only if the offender, victim, or survivor disputes the amount of restitution ordered. *Id.*; *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, ¶ 27

**{¶70}** Prior to ordering restitution, "a sentencing court must engage in a 'due process ascertainment that the amount of restitution bears a reasonable relationship to the loss suffered.'" *State v. McLaurin*, 8th Dist. Cuyahoga No. 103068, 2016-Ohio-933, ¶ 13, quoting *State v. Borders*, 12th Dist. Clermont No. CA2004-12-101, 2005-Ohio-4339, ¶ 36. "The court must determine the amount of restitution to a reasonable degree of certainty, ensuring that the amount is supported by competent, credible evidence." *McLaurin* at ¶ 13, citing *State v. Warner*, 55 Ohio St.3d 31, 69, 564 N.E.2d 18 (1990). Although the decision to impose restitution is discretionary with the court, its determination of the amount of loss is a factual question that we review under the competent, credible evidence standard. *State v. Warner*, 55 Ohio St.3d 31, 69,

564 N.E.2d 18 (1990); *State v. Didion*, 173 Ohio App.3d 130, 2007-Ohio-4494, 877 N.E.2d 725, ¶ 20 (3d Dist.).

**{¶71}** Lenard objected at sentencing to the restitution order, contending that no documentation was presented to the court during sentencing to support the restitution order. On appeal, Lenard makes a general statement, without explanation, that the restitution order does not bear a reasonable relationship to the actual loss suffered.

**{¶72}** Our review of the record demonstrates that the court considered trial testimony regarding the amounts paid to Lenard for the purchase of real estate. In *State v. Kingsbury*, 8th Dist. Cuyahoga No. 102973, 2016-Ohio-590, this court reviewed a restitution order that was based on evidence not presented at a restitution hearing but on the testimony and documentary evidence presented at trial. Therefore, as long as competent and credible evidence was presented during trial upon which a restitution order could be based, a separate restitution hearing may not be required.

**{¶73}** Nevertheless, we find that the restitution amount is not supported by the record, and that the court did not consider Lenard's ability to pay. In *Kingsbury*, this court concluded that competent and credible evidence was presented to support a restitution award, but the amount of restitution was not supported by the record. *Id*. at ¶ 18. This court found that this unsupported amount, albeit likely a mathematical error, coupled with the trial court's failure to consider Kingsbury's present and future ability to pay the restitution ordered, amounted to plain error. *Id*. at ¶ 20.

**{¶74}** In this case, the documentation at trial showed that the Bentleys issued three separate checks totaling $13,771 to entities owned by Lenard. The evidence demonstrated that Lenard deposited those checks into his respective business accounts. However, the evidence

also showed that a cashier's check was presented to Blanche in the amount of $400 allegedly from Saydeh. Additionally, testimony was presented that the Bentleys spent approximately $4,000 in renovating the property. These amounts, if deemed relevant, were not considered by the trial court in making the restitution order.

{¶75} Additionally, although Matic testified that he paid AMC Financial $27,000 towards the purchase of the Parma property, the documentation at trial showed that Matic issued numerous personal checks totaling only $11,000, and a cashiers check to Cleveland Title Agency for $15,150. Additionally, the land contract depicts that an additional $100 deposit was paid. When added together, these amounts do not equal the restitution order of $27,000. Moreover, additional evidence was presented that Matic had to purchase the property from the bank in order to obtain ownership. Whether Matic suffered any additional economic loss as a direct and proximate cause of the commission of Lenard's offenses during this subsequent purchase was not considered.

{¶76} Finally, the trial court failed to consider Lenard's present and future ability to pay prior to ordering restitution as required pursuant to R.C. 2929.18. This court has previously held that a court's failure to make this consideration amounts to plain error. *See, e.g., State v. Burns*, 8th Dist. Cuyahoga No. 95465, 2011-Ohio-4230. We recognize that this issue was not raised on appeal; however, because the record does not support the trial court's restitution order and the issue of restitution will be revisited on remand, this court finds that the trial court's failure to make this consideration is further grounds for reversal.

{¶77} Accordingly, the assignment of error is sustained. The restitution orders are vacated, and the cases are remanded to the trial court to conduct a restitution hearing and consider Lenard's present and future ability to pay.

## IX. Consecutive Sentences

**{¶78}** In his eighth assignment of error, Lenard contends that his sentence is contrary to law and that consecutive sentences were not properly imposed.

### A. Contrary to Law

**{¶79}** Our review of felony sentences is governed by R.C. 2953.08(G)(2), which allows "an appellate court [to] vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 21. A sentence is not clearly and convincingly contrary to law "where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies post-release control, and sentences a defendant within the permissible statutory range." *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10.

**{¶80}** Lenard's sentences are not contrary to law. In CR-15-599742, he was sentenced to 12-month concurrent sentences on each of Counts 1, 3, and 4, all felonies of the fourth degree. A 12-month sentence is within the permissible range for fourth-degree offenses. R.C. 2929.14(A)(4).

**{¶81}** Additionally, the sentence is not contrary to law because the trial court stated on the record that it considered all relevant seriousness and recidivism factors (tr. 1066) and the court included in its sentencing journal entry in each case that it considered all required factors and that prison is consistent with the purpose of R.C. 2929.11. *See, e.g., State v. Kamleh*, 8th Dist. Cuyahoga No. 97092, 2012-Ohio-2061, ¶ 61, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 18 (trial court's statement that it considered the required

statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes). Accordingly, the trial court's sentence is not contrary to law.

## B. Consecutive Sentences

**{¶82}** Consecutive sentences may be imposed only if the trial court makes the required findings pursuant to R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 20-22. Under the statute, consecutive sentences may be imposed if the trial court finds that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, and (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. In addition, the court must find that any of the following applies:

> (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense;

> (2) at least two of the multiple offenses were committed as part of one or more courses of the conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of the courses of conduct adequately reflects the seriousness of the offender's conduct; or

> (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶83}** In order to impose consecutive sentences, the trial court must both make the statutory findings mandated under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry. *Bonnell* at the syllabus.

**{¶84}** In this case, the record reflects that the trial court both made the statutory findings at the sentencing hearing and incorporated those findings into the sentencing entry. However, Lenard does not challenge whether the court made the findings, but rather contends they are

unsupported by the record. Specifically, he contends that the record does not support that the harm was so great or unusual because (1) the victims voluntarily signed the documents that disclosed the liens and foreclosure actions; (2) any "alleged harm * * * was preventable by reading the documents"; and (3) Blanche paid only $13,000 for a house that had a much higher market value. These arguments are absurd.

{¶85} Lenard chose to hold himself out as a person who had the authority to market and sell these properties. But for his deceitful actions, the victims would not have been harmed. Moreover, the Bentleys paid $13,000 for a house that they never owned, still do not own, and is not in their possession; the market value of the house is irrelevant. Accordingly, Lenard's sentence is not contrary to law and consecutive sentences were properly imposed. The assignment of error is overruled.

{¶86} Judgment affirmed in part, vacated in part, and remanded to the trial court to conduct a restitution hearing and consider Lenard's present and future ability to pay at that hearing.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence and a restitution hearing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

EILEEN T. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR